The judgment of the district court is therefore affirmed.

SUTLIFF, C.J., and BRINKERHOFF, J., concurred.
PECK and GHOLSON, JJ., dissented.

---

## COLLISTER HASKINS ET AL. *v.* ALCOTT & HORTON.

1. A legal and valid assignment for the benefit of creditors, and its acceptance by the trustee, will not bar a suit by creditor against assignor, while the trust is unexecuted, upon a claim which has not been presented to nor rejected by the trustee.

2. A proper construction of section 1 of the " act regulating suits by and against companies and partners " (S. & C. St. 1138), authorizing suits by and against companies not incorporated, in the *firm name*, limits its operation to companies formed for and doing business or holding property within this state.

3. A company suing under said statute in the *firm name*, must by averments bring itself within the purview of the section, and the omission to do so is proper cause of demurrer under the second subdivision of section 87 of the code.

4. Where judgment by a court of competent jurisdiction has been rendered in favor of one *firm* and against another, and a suit is instituted under the 4th section of the act to charge the property of the individual members of the latter firm, it will be presumed that the original judgment was properly rendered in favor of the plaintiff, and the firm, *as such*, may have the further relief given by the 4th section, without such further averment.

5. Where a petition sets forth the recovery of judgment for a certain sum, without stating the rate of interest it is entitled to draw; but the plaintiff, in his petition, *demanded judgment for the amount of the recovery, with interest thereon, at ten per cent.*, from a day therein stated, the record showing a submission of the cause to the court by the parties, and the rendition of a judgment for the original judgment, with ten per cent. interest, without exception. Held, that the demand of ten per cent. interest would authorize the introduction of proof of that rate, and that the production of such proof is to be presumed.

ERROR to the district court of Wood county.

The defendants in error, plaintiffs below, in February, 1860, filed a petition, in their firm name, in the court of

common pleas of Wood county, against the plaintiffs in error, defendants below, Collister Haskins, Jesse L. Roller, and Whitcomb Haskins, setting forth that, at the previous October term of said court, the defendants in error, being a firm doing business under the name of Alcott & Horton, (but without averring that said firm was formed for or doing business within the State of Ohio,) recovered a judgment against the firm of " Haskins, Roller & Haskins," a partnership doing business under that name within this state, for the sum of $1675.27; the continued existence, in full force, of said judgment, and the issuance and return of an execution thereon of no property of the firm whereon to levy; and that the firm of Haskins, Roller & Haskins has no property out of which to make the judgment, or any part of it; that said firm is a partnership doing business in the State of Ohio, under and by virtue of the statute authorizing the organization of special partnerships; and that Collister Haskins, Jesse L. Roller, and Whitcomb Haskins, the individual members of the firm, have sufficient property belonging to them individually to pay said judgment, but that it can not be reached by process on the judgment; and that, therefore, they may have judgment against said individual members of said firm, for the amount of said judgment, for $1675.27, with interest thereon, at ten per cent., from November 29, 1859; and that execution may issue thereon against said individual members of the firm, or any of them, in accordance with the statute in such case made and provided.

The defendants below, plaintiffs in error, in bar of the action of the plaintiffs below, and in answer to their petition stated that on January 1, 1860, and previous to the filing of the petition, an assignment was made of all the property of said firm of Haskins, Roller & Haskins, as well as the whole of the private property of its individual members, to one Samuel Johnson, for the use and benefit of the creditors of their said firm, among whom were the plaintiffs below. That said assignee was then fulfilling the duties of said assignment under the order and direction of the probate court of said county, and that the claim of said plaintiffs had not been

filed, or offered to be filed with said assignee, nor had the same been rejected by him. .

To this answer a demurrer was filed by Alcott & Horton, assigning for cause that " it does not state facts sufficient in law to bar their right to recover."

The demurrer was sustained by the court, and thereupon, by consent of parties, the assignee was made a party defendant and entered his appearance, and the cause was submitted to the court, without asking leave to answer further.

The court thereupon found the facts set forth in the petition to be true, and rendered a judgment for said Alcott & Horton for the amount claimed in the petition, with interest at the rate of ten per cent.

This judgment, upon petition in error prosecuted by the defendants below, was affirmed in the district court, and the present petition in error is prosecuted to reverse said judgment of affirmance.

The errors assigned are, that the district court erred,

1st. In affirming the judgment of the court of common pleas.

2d. In rendering judgment for the defendant in error, when the same should have been rendered in favor of plaintiffs in error.

*James Murray*, for plaintiffs in error.

*J. F. Price*, for defendants in error.

PECK, J.—Alcott & Horton having obtained judgment in Wood common pleas against the *firm* of Haskins, Roller & Haskins, under the provisions of section 1 of the " act regulating suits by and against companies and partnerships " (S. & C. St. 1138), authorizing suits by and against companies and associations, formed. for the purpose of carrying on any trade or business within the State of Ohio, *by the usual and ordinary name of such firm*, and being unable to make the amount of the judgment out of the joint effects, sought, in the petition filed in Wood common pleas, to subject the *individual property* of the persons composing said firm to its

payment, as authorized by section 4 of the act above referred to.

The persons composing the firm of Haskins, Roller & Haskins answered in bar of the petition, that prior to the filing thereof, the firm, and the individuals members thereof, had, jointly and severally, made legal and valid assignments of all their joint and separate property to Samuel Johnson, for the benefit of all the creditors of said firm, including said plaintiffs. That Johnson had accepted the trust and was then fulfilling its duties, under the order and direction of the probate court of said Wood county ; but that the claim of the plaintiffs had not been filed or offered to be filed with said assignee, nor had it been rejected by him.

A demurrer was sustained to this answer in the court of common pleas, and the principal error relied on for reversal of the judgment in the district court, was the sustaining of that demurrer.

The answer assumes, that the mere execution of a legal and valid assignment by the debtor firm and its several members, of all the joint and separate property, for the benefit of all its creditors, and its acceptance by the assignee, deprives the creditors of such firm of all the remedies previously open to them, for the collection of their claims ; or at least suspends all such remedies, until the trust created by the assignment has been discharged by the realization and distribution of the trust fund.

The general principle certainly is, that a debtor can not change his relation to his creditors by a voluntary assignment to them. Burrill on Assignments, 340. To have this effect there must have been an assent, amounting to an acceptance, of the assignment, by the particular creditor whose right of action is thus barred or suspended.

This assent may be manifested not only by the written or verbal acceptance of the creditor, but also, it is said, by actually receiving the benefit, or by claiming such benefit, or by taking legal measures to obtain it. Burrill on Assignments, 340, 341, and cases cited.

It is very questionable, however, whether the mere receipt

of partial payment, from the assignee out of the trust fund, where the terms of the assignment or of the statute do not expressly bind the creditor to delay suit, will bar the creditor from suing until the trust is terminated. *Bank of Bellows Falls* v. *Deming*, 17 Vermont (2 Washburn), 366. The bar, if any, must arise out of a contract or statutory inhibition express or implied. There is, confessedly, no express provision in the deed of assignment, nor in the statute regulating its administration, which prohibits suits against the assignor pending proceedings under it, and while an implica tion to restrain proceedings by creditors against the *property assigned* would, if at all necessary, be reasonable and proper ; such an implication, which would also prevent the subjection of the *subsequent* earnings and acquisitions of the debtor, not embraced in the assignment, would be unreasonable and unjust. It would lead to great abuses, and might be resorted to for the mere purpose of protracting the collection of just debts, and securing immunity for months or years, while the debtor is engaged in lucrative and profitable operations, and perhaps able to liquidate all his liabilities.

"A legal and valid assignment" devotes all the property covered by it to the creditors presenting their claims in pursuance of the statute, which appropriation can not be disturbed nor varied by a dissatisfied creditor ; but to give it a more extended operation, so as to protect, even temporarily, subsequently acquired property, would be productive of much mischief. The future earnings and acquisitions of insolvent debtors should be always open to their creditors. An enforced delay of a few months, or days even, may render a subsequent suit profitless and unproductive.

The apprehended hardship of subjecting insolvent debtors to increased costs, consequent upon suits by creditors during the progress of the assignment, is entitled to but little weight, and is more than compensated by the power which it confers over their subsequent acquisitions. It may, after all, be safely committed to the self interest of the creditor to not increase, unnecessarily, the embarrassments of his insolvent

debtor, and at the same time preserve his claim in a condition to participate in a distribution of the property assigned.

We do not perceive anything in the " act regulating the mode of administering assignments," which conflicts, in any respect, with the views here expressed. It regulates the administration of the assets assigned, and points out the mode in which a participation therein may, and indeed must, be sought. If a creditor does not acquiesce, his claim, and his remedies thereon, still remain, save that he can not appropriate the assigned property to its payment, except in the manner and proportions therein prescribed. There is not, in the act, any express prohibition of independent suits by creditors, while proceedings under it are in progress, and for the reasons already assigned, we think, such prohibition should not be implied.

2d. It is claimed that the petition is substantially defective, and that even if the answer is not of itself a legal bar to the action, it is nevertheless good enough for such a petition.

The particular defect relied on, is, that the suit is brought in the name of a firm—Alcott & Horton—without averring the state of facts which, under the statute, authorizes the bringing of a suit in the name of a firm.

Section 1 of the " act in aid of the law regulating suits by and against companies and partners" (S. & C. Stat. 1138), enacts : " That any company or association of persons formed for the purpose of carrying on any trade or business, or for the purpose of holding any species of property within the State of Ohio, and not incorporated as such, may sue or be sued in any of the courts of this state, by such usual or ordinary name as such company, partnership or association may have assumed to itself or be known by," etc.

The petition, so far as relates to the character and capacity in which the plaintiffs sue, is in these words : " The plaintiffs say that they are a firm doing business under the name and firm of Alcott & Horton." The christian names of the partners are not stated. Nor is it stated that they are a company *formed for the purpose of carrying on any trade or business within the State of Ohio,* nor that they are or were doing

business under that name *within the state,* and there is no averment from which such a state of facts can fairly be inferred.

The construction of this section, owing to the punctuation, is somewhat obscure ; but a reference to the second section, which provides for " service of process against *such* company or firm under the provision of the act," by a copy *left at their usual place of doing business within the county,"* shows that the company or firm suing or being sued, must be one doing business *within the state,* and clearly indicating an error in the punctuation of the first section as above quoted.

This construction has been generally followed and approved by the courts of the state. *Brownson* v. *Metcalfe et al.,* 1 Handy Sup. Ct. Rep. 188.

It is an elementary principle in pleading, that where a statute, upon certain conditions, confers a right, or gives a remedy, unknown to the common law, the party asserting the right, or availing himself of the remedy, must, in his pleadings, bring himself, or his case, clearly within the statute.

A suit by or against a company not incorporated by its firm name, without disclosing the names of the several partners, could not be maintained at common law. It lacked the certainty deemed essential to judicial proceedings. 1 Chitty Pl. (10th ed.) 256, and cases cited. This somewhat inconvenient rule, has been modified in part by the statute above referred to, but the act, as we construe it, only permits this to be done by and against unincorporated companies *doing business within this state.* It would, therefore, seem to follow, that the averment that the plaintiffs are a firm doing business by that name, without superadding " within this state," or other equivalent words, would not entitle them to maintain an action in the name of the firm. The plaintiffs do not bring themselves within the statute creating the exception.

It is more difficult to determine how the defendants are to avail themselves of the omission. Is it to be regarded as an averment imperfectly made, to be remedied only by a motion to make the petition in this respect more certain and specific ;

or is it properly subject to a demurrer for want of *legal* capacity in the plaintiffs to sue? It is not perhaps of much practical importance to determine this question in the present suit, as the result would be the same in either case.

But in view of the rule at common law, above alluded to, and the fact that the objection appears upon the face of the petition, we incline to the opinion, that the objection should have been taken by demurrer as not showing that the plaintiffs had a legal title to the character in which they sue. Vansantvoord, in his recent treatise on pleadings, under the code of New York (2d ed. 668), says: "Objections to the person of the plaintiff that he has not legal capacity to sue, are: 1st. That the plaintiff is not entitled to sue by reason of some personal disability; or, 2d. That the plaintiff has no title to the character in which he sues." The objection here is, that the plaintiffs, upon the showing made in the petition, are not *in law*, entitled to sue *as a firm*. If this be true, the objection is waived, no demurrer for that cause having been filed. Code, secs. 87, 88 and 89.

The question is one of much importance, and we have thus far considered it as a question arising under the first section of the act above quoted, where a recovery is sought by one *firm* against another firm, and in which, we conceive, the averment spoken of should be made; but being a proceeding under the 4th section of the act, to charge the separate property of the persons composing the debtor firm with the payment of a judgment *already recovered against their firm* and in favor of the plaintiffs, suing in that action *as a firm*, the question assumes a different aspect. The recovery in the first action established the right of the plaintiffs to *sue and have judgment in the name of their firm*. The record is conclusive in the second action of the regularity of the judgment in the *name of the firm*. No averment on the part of the plaintiffs is necessary to sustain it, and the individual members of the debtor firm would not be permitted to disprove it.

Lastly, it is said the court of common pleas erred in rendering judgment for ten per cent. interest, on the judgment

specified in the petition, and that the district court for that reason, also erred in its affirmance.

It is claimed that the court of common pleas, as appears from the record, rendered its judgment solely upon the allegations of the petition, which contains no averment that the judgment against the firm of Haskins, Roller & Haskins, bore that or any other rate of interest.

The petition, in setting forth the recovery, does not, it is true, state the rate of interest it was to bear; but after averring recovery of a judgment against the firm for $1675.27, its subsisting obligation and the names of the persons composing the firm, it demands judgment against the individual partners, " for the amount of said judgment for $1675.27, with interest thereon at 10 per cent. from November 29, 1859." And the entry of judgment, after stating the sustaining of demurrer to the answer—the failure of defendants to amend or reply—the making of the assignee a party by consent and the entry of his appearance, is in these words: " and thereupon *this cause is submitted to the court*, and neither party requiring a jury and the court being fully advised in the premises, do find the facts set forth in the plaintiffs' petition to be true. It is therefore ordered, etc., that the said Collister, Haskins, etc., pay to the said plaintiffs said sum of $—, etc., with interest at the rate of 10 per cent.," and execution is awarded thereon in case of default.

It will be perceived from this entry, that the record does not necessarily exclude the presumption, that testimony in regard to the rate of interest, was heard and considered by the court, and such evidence was, we think, admissible.

There were two acts regulating interest upon judgments in force when that cause of action arose : 1. The amendatory law of March 14, 1850 (2 Curwen, 1569), authorizing persons, other than banking institutions, to stipulate in written contracts for the payment of interest, at any rate not exceeding ten per cent., and providing that interest upon judgments, rendered upon such contracts, should be computed at the same rate. 2. The law of January 19, 1824, which fixed the rate of interest upon judgments at six per cent., and which

was applicable to all cases, where no other rate was specified in the contract.

In many portions of the state, it has not been customary to embody the increased rate of interest in the judgment; and this was doubtless the usage in Wood common pleas, though we think the better practice is to embody the increased rate of interest in the judgment itself. Interest is but the *incident*, and to be assessed in conformity with the statute. The rate depended upon the terms of the contract in suit in the original action; and these were not disclosed by the record as set forth, nor is the rate expressed in the body of the judgment. The demand for the increased rate of interest, is not, therefore, inconsistent with the record declared on, and though not strictly traversable, notified the other party and the court that the plaintiff claimed the judgment was entitled to the increased rate, and this demand, in the absence of any motion to strike out or make more specific, was, we think, sufficient to warrant the introduction of proof. Every reasonable *intendment* must be made to support the judgment of a court having jurisdiction of person and subject matter; and we, therefore, presume such proof was received, inasmuch as it does not affirmatively appear that no such proof was introduced.

Judgment affirmed.

SUTLIFF, C. J., and GHOLSON, BRINKERHOFF and SCOTT, JJ., concurred.