[No. 3,220.]

# C. W. SMITH v. T. J. MOYNIHAN, JAMES AITKEN, AND JOHN LOCHHEAD.

CONTRACT ESTABLISHING PARTNERSHIP.—A joint contract in writing, entered into by several persons with another, in which they agree to furnish certain materials and perform certain labor for such other, and which does not fix or define the relations of.such persons among themselves, or as to third persons, and which does not show any community of interest between them in the profits to be realized, nor the losses to be sustained, does not of itself, by legal intendment, establish a partnership between them in reference to the work undertaken.

PROOF OF PARTNERSHIP.—It is.the business of one who alleges a partnership to show it affimatively. The burden of proof is on him.

JOINT CONTRACT—PARTNERSHIP.—If two persons enter into a joint contract, in writing, to perform certain labor and furnish certain materials for another, which contract does not define the relations of such persons between themselves; and if, by the understanding between themselves, one is to perform one part of the labor and the other another, and each is to receive a proportional sum of the money paid for the whole, the relation of partners does not exist between them.

IMPLIED AND EXPRESS CONTRACT.—The difference between the method of proving an implied and express contract is this: The former must be proved by an ascertained agreement between the parties, while in case of

the latter, the law will imply that the party did make such an agreement as under the circumstances disclosed he ought in fairness to have made.

Joint Liability.—If two jointly contract to do work and furnish materials for another, and the two, as between themselves, are not partners, but each is to perform a portion of the job and receive his proportional part of the pay, and one of the two employs a laborer on his part of the job, the law will not raise an implied contract that both are liable to the laborer.

Parol Evidence to Vary Written Contract.—When a stranger to a joint written contract, entered into by several persons, relies on it as evidence of a partnership between the persons who signed it, in reference to the work the parties undertook by the contract to perform, such parties may show, by parol evidence, the true relations between themselves, even though such evidence vary or contradict its terms.

Idem.—The rule that parol evidence cannot be received to vary or contradict a written contract, applies only to controversies between parties to the contract, their representatives, and those claiming under them, and has no application to a controversy to which a stranger is a party.

Appeal from the District Court of the Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion.

*J. W. Winans,* for Appellant.

The Court erred in permitting defendants to go behind their written contract with Goodall & Nelson, and to give parol evidence of an oral agreement between themselves, made prior to said written contract, because the effect of said agreement was to vary, alter, and contradict said written contract. It was a prior understanding, and so far as its terms were inconsistent with the written contract, as afterwards made with Goodall & Nelson, they were merged in the latter. On this point, says this Court, in *Conner* v. *Clark,* 12 Cal. 171: "It is a firmly settled principle that parol evidence of an oral agreement alleged to have been made at or before the time of the execution of the written contract, cannot be permitted to vary, qualify, or contradict, add to or subtract from, its written terms." The rule is thus stated in 1 Greenleaf on Evidence, 12 ed., 312, Sec. 275.

This claim is equally untenable upon principle and authority ; upon principle, for reasons heretofore shown, growing out of the peculiar relations of plaintiff towards defendants and their contract with the owners of the boat; upon authority, because the point has been directly adjudicated in the plaintiff's favor. It expressly arises in *Voorhees* v. *Jones,* 29 N. J. (5 Dutcher) 270 ; *Stevens* v. *Faucet,* 24 Ill. 485 ; *Beall* v. *Poole,* 27 Maryland, 653.

Defendants were estopped from impeaching, altering, or contradicting the written contract with Goodall & Nelson, because by it plaintiff had been induced to perform the work on the faith of the joint liability for such performance which defendants had assumed therein. (*Heane* v. *Rogers,* 9 B. & C. 577, 586.)

The contract of defendants with Goodall & Nelson established a partnership between Lochhead and Moynihan & Aitken, in this particular transaction, and rendered them liable, as partners, to plaintiff, notwithstanding the existence of the side understanding between them. (Ross' Leading Cases, Vol. 3, 296 ; *Waugh* v. *Carver,* 2 H. Black. 235 ; *Ex Parte Chick,* 8 Bingh. 469 ; *Harbeck* v. *Southwell,* 18 Wis· 418 ; *Meaher* v. *Cox,* 37 Ala., N. S., 201; *Decker* v. *Furniss,* 3 Duer, 304 ; *Everitt* v. *Chapman,* 6 Conn. 347 ; *Winship* v. *Bank of the United States,* 5 Peters, 560; *Pattison* v. *Blanchard,* 1 Selden, 187; *Richardson* v. *French,* 4 Metcalf, 577.)

Plaintiff's right of recovery did not depend upon the question of partnership. If no partnership existed, a direct liability to plaintiff, on the part of Moynihan & Aitken, was created by the contract between them and the owners of the boat. All three contracted with Goodall & Nelson to do the work, and could have been made responsible by Goodall & Nelson. The work which plaintiff performed, Moynihan & Aitken as well as Lochhead agreed to do.

*Wm. Hayes* and *F. G. Newlands*, for Respondents.

There was no partnership between the defendants, for there was no communion in the labor, or communion in profit or loss, nor was there any intention to create a partnership. Collyer, in his work on Partnership, Sec. 21, says: "If two persons jointly agree to do a particular piece of work, but the money received for such work is not to be employed on their joint account, the persons so contracting are not partners." Here, the money received by Moynihan & Aitken and Lochhead was not to be, and was not, in fact, employed on their joint account. (Story on Partnership, Sec. 30 ; *Finckle* v. *Stacey*, Select Cases in Chan., 9 ; *Porter* v. *McClure*, 15 Wendell, 187.)·

The parties to this agreement were Goodall & Nelson, of the one part, and Moynihan & Aitken and Lochhead, of the other part. As to these two parties, their relations, intentions, and engagements, the instrument speaks, and is conclusive; but as to the relations between Moynihan & Aitken and Lochhead, *inter se*, their intentions and engagements with each other, it is silent. It does not, therefore, of itself create a partnership. (*Post* v. *Kimberly*, 9 John. 502.)

The plaintiff must not only show the joint undertaking of Moynihan & Aitken and Lochhead, but he must go further, and affirmatively show that there was an agreement between the two parties "to share in the ultimate profit and loss of the undertaking;" and if the written agreement does not express it, they must show it by parol, for no intendment can be made in favor of a partnership, so as to supply the absence of facts. The written instrument does not contain any agreement between Moynihan & Aitken and Lochhead to share in the ultimate profit and loss of the contract. Such agreement cannot be a matter of intendment. It must be proved. (*Holmes* v. *U. S. Ins. Co.*, 2 Johns. Cases, 331.)

Admitting that the parol testimony does tend to contradict the written instrument, such contradiction is very limited in its extent. It does not contradict it as to the question of partnership, for there is nothing in the instrument, as already shown, to indicate a partnership. It can only be deemed to contradict it, if at all, in this, that it shows that as between themselves, each was to do a specified portion of the work, and each to have a specified portion of the gross sum, whilst as between themselves and Goodall & Nelson, they were jointly to do the whole work, and jointly to receive the gross sum. Admitting, then, for the sake of argument, that this involves contradiction, we justify the admission of the evidence upon the ground that the general rule of evidence, that where the parties to a contract have reduced their agreement to writing, parol evidence shall not be received to alter or contradict the instrument, applies only to the parties, and those claiming under them. Greenleaf, in his work on evidence, Vol. 1, Sec. 279, in regard to this rule, says: "The rule under consideration is applied only in suits between the parties to the instrument." (2 Iredell's Rep., N. C., 30.)


By the Court, WALLACE, C. J.:

The action is brought to recover against the defendants, Lochhead, Moynihan, and Aitken, as copartners, for labor performed and materials furnished by the plaintiff about the building and construction of a steam engine on board the tugboat Wizard. The plaintiff is a coppersmith and plumber. The defendant John Lochhead is a builder of steam engines, and the defendants T. J. Moynihan and James Aitken compose the firm of "Moynihan & Aitken," and carry on the business of boiler making. In December, 1868, a contract

was entered into between Goodall & Nelson, owners of the tugboat, and the defendants, which is a follows:

"Articles of agreement between Goodall & Nelson and John Lochhead and Moynihan and Aitken, all of the City and County of San Francisco, State of California, witnesseth: that the said Goodall & Nelson, for themselves, their heirs and assigns, covenant and agree as follows, to wit: The said John Lochhead and Moynihan & Aitken agree to build and put on board a boat and perform a satisfactory trial trip in one hundred (100) working days from the date hereof, suitable machinery for a first-class steamtug and water boat. Said machinery to consist of twenty-eight (28) inch cylinder and twenty-four (24) stroke, driving two (2) propellers of from seven and half ($7\frac{1}{2}$) to eight (8) feet in diameter with two (2) seven (7) inch hammered wrought iron shafts, with double cranks for each shaft, to be made to balance crosshead, piston, etc. Shafts to be put in two (2) pieces coupled together with wrought iron couplings, a wrought iron crosshead, two (2) connecting rods of the requisite size, steel or Swedish iron piston rod, gear wheels to connect the two (2) engines together, two (2) pumps for bilge, and two (2) for feeding boilers to be driven by main engine, heater sufficient to condense two-fifths (2-5) of the steam, boilers two (2) in number as per plans and specification of C. C. Bemis, and to be made and connected under the supervision and inspection of said C. C. Bemis, United States Inspector of Boilers, to carry eighty (80) pounds of steam to the square inch, steam drum as near as practicable the length of the boilers, ash-pans, fire-room plates, gongs; bells, gauges, safety-valves, fire tools and everything necessary to her complete and successful working ; donkey engine to be supplied by Goodall & Nelson, to be connected to feed boilers; by Moynihan & Aitken and John Lochhead, machinery and boilers, to be such that she may be entitled to a certificate

from the United States Inspector of Boilers as a tugboat, and if anything is omitted in this contract that prevents the said boat from procuring said certificate, the same shall be supplied by the said John Lochhead and Moynihan & Aitken without further costs to the said Goodall & Nelson, other than the sum hereinafter mentioned as the contract price of said machinery—all of the pipes and connections to be of copper.

"Said Goodall & Nelson agree to pay to the said Lochhead and Moynihan & Aitken the sum of fifteen thousand two hundred and fifty ($15,250) dollars in United States gold coin, in payments as follows:   On signing contract ($2,250) twenty-two hundred and fifty dollars, December 26th, ($2,000) two thousand dollars, January 16th, 1869, two thousand ($2,000) dollars, February 6th, 1869, two thousand ($2,000), February 27th, 1869, two thousand ($2,000) dollars.   The balance of ·five thousand ($5,000) dollars shall be paid on the performance of a satisfactory trial trip; *provided,* if the said boat and her machinery is not completed in one hundred working days, so as to perform said trial trip, fifty ($50) dollars for each and every day thereafter shall be deducted from said final payment.

"Said boat is to be built at Cousin's yard, near the Merchants' Dry Dock.

"Made and entered into this 18th day of December, 1868, in San Francisco, California.

[Seal.]          "GOODALL & NELSON,
[Seal.]          "JOHN LOCHHEAD,
[Seal.]          "MOYNIHAN & AITKEN."

The evidence for the plaintiff tended to prove that after the making of this contract Moynihan inquired of him the price at which he was doing copper work, and what length of time he would give on the payments, and on being told the price and length of credit, Moynihan said he had a job

on the "Wizard," and would see Lochhead about getting the copper work for the plaintiff. That subsequently Lochhead and Moynihan came together to the plaintiff's shop, and employed him in the business. The work done by the plaintiff was done upon the *engine,* and *not upon the boilers.* The evidence upon the part of the defendants, Moynihan and Aitken, upon the other hand, tended to prove that the plaintiff, in the first instance, applied to Moynihan, and requested him, as a mere act of friendship, to use his influence with Lochhead to induce the latter to employ the plaintiff to do the copper work upon the engine; that Moynihan promised him to do so, and that the employment of the plaintiff was afterwards made exclusively by Lochhead, and not by the other defendants.

The action was tried by the Court sitting without a jury, and judgment was rendered for the defendants. An order was subsequently made denying the motion of plaintiff for a new trial, and the appeal is taken from the judgment and order.

1. The evidence as to the *express contract* between the plaintiff and Moynihan being conceded to be substantially conflicting, and the Court below having found the fact against the plaintiff, that part of the case need not be noticed further.

2. The active agency of the defendant Lochhead in the employment of the plaintiff is not controverted. If he, in fact, sustained the relation of copartner to the other defendants in reference to the work to be done under the contract, then his employment of the plaintiff about the partnership business bound the copartnership, and necessarily rendered it liable to the plaintiff. Upon this view, judgment having been rendered for the defendants, the Court below, by necessary implication, must have found the fact to be that there was no partnership between Lochhead and the other defendants; and unless the fact of copartnership was established at

the trial, beyond a substantial conflict of testimony upon the point, we must assume the finding in this respect to be also correct.

3. It is argued that the effect of the contract upon its face was by legal intendment to establish a partnership between Lochhead and Moynihan & Aitken in reference to the work therein undertaken by them. We do not think so. So far as Goodall & Nelson were concerned, it jointly bound the defendants to the performance of the stipulated work, upon the terms and conditions therein mentioned; but it was not its scope or purpose to fix or define the relations of the defendants, either *inter sese* or as to third persons. Certainly unless we are prepared to say that every joint contract necessarily involves the contracting parties in the relation of copartners, none of the essential elements of a copartnership—no community of interest between the defendants in the profits to be realized nor the losses to be sustained in connection with the subject matter of this contract—appear upon its face. On the contrary, if the contract is to be scrutinized for this purpose, it will be seen to be one by which the defendant, John Lochhead, individually, and the other defendants as a business firm, jointly bound themselves to the performance of the stipulated work. It purports upon its face to be the contract of "*John Lochhead and Moynihan & Aitken;*" of "*Moynihan & Aitken and John Lochhead,*" and only in these respective characters is it signed and sealed by the defendants. But, whatever the just weight to be given to this view, the contract in its terms obviously fails to affirmatively establish the relation of copartnership between the defendants. Nor was any proof of the partnership attempted by the plaintiff *aliunde.* Unquestionably the burden was upon him to prove the existence of the copartnership between the defendants, if his purpose was to hold them liable in that relation; and until he should do so, in a measure, at least, the defendants were not called upon to

disprove it, for, as remarked by KENT, C. J., in *Post* v. *Kimberly*, 9 Johns. 503, "we are not to infer it because the contrary is not expressly shown." But here the contrary was expressly shown by the defendants. They established by evidence the actual relations existing between themselves in the prosecution of the work. It appeared from the evidence, and if that evidence was admissible at all in the case (a point which will be presently considered), it established beyond controversy the fact to be that Lochhead upon one hand, and the defendants Moynihan & Aitken upon the other, before entering into the contract with Goodall & Nelson, agreed together that each party was to do upon separate accounts a distinct and defined portion of the entire work—that Lochhead was to construct the engine and to receive therefor seven thousand nine hundred and fifty dollars of the fifteen thousand two hundred and fifty dollars to be paid by Goodall & Nelson, and the defendants Moynihan & Aitken were to construct the boilers and to receive therefor the balance of that sum, viz: seven thousand three hundred dollars, and it was proven that the work was actually performed under and pursuant to this agreement. Whether, then, we are to look merely at the contract with Goodall & Nelson or to consider the actual circumstances under which that contract was made and the work performed, we have no difficulty in holding that the relation of partnership did not exist between the defendants.

4. The only remaining ground upon which the plaintiff relies to reverse the judgment which is necessary to be considered is, that upon the circumstances disclosed by the evidence under which the plaintiff performed the work the law will imply a promise upon the part of the defendants to compensate him. In general an implied contract, in no less degree than an express contract, must be founded upon an ascertained agreement of the parties to perform it, the substantial difference between the two being in the mere mode

of proof by which they are to be respectively established. The law will imply that a party did make such a stipulation as under the circumstances disclosed, he ought, upon the principles of honesty, justice, and fairness to have made. Of course all the circumstances actually surrounding the parties in the particular transactions are to be carefully considered before this implication of a promise is to be indulged. We have already referred to the fact, established by the proofs of the defendants, that though they were all, by the contract, jointly bound to Goodall & Nelson for the performance of the entire work therein mentioned, yet that as between themselves the construction of the engine, for labor and materials furnished, upon which the plaintiff seeks to recover, was the distinct work of the defendant, Lochhead, for which he was to receive the whole compensation. In the sum to be thus received by him the other defendants had no interest whatever, nor were they concerned in any profit or loss to accrue upon the performance by Lochhead or his employés of his portion of the work. In view of this actual condition of things we think that it would be difficult to imply a contract against the defendants, Moynihan & Aitken, to pay for the work done upon the engine, their true relation to Lochhead and to the work which was his to perform, would not, upon principles of honesty, justice, or fairness, imply a promise upon their part to pay for the labor done or materials furnished by the plaintiff about that work. They, of course, were interested in one sense in the performance by Lochhead of his portion of the entire work, for which all the defendants were jointly bound to Goodall & Nelson, for his failure in that respect would, under the contract, have embarrassed or defeated their right to receive the compensation for their own labor in constructing the boilers; but their interest in Lockhead's portion of the work was not of such a character as that it could be said that they received a benefit from the labor performed by the plaintiff

in the sense which would support an action against them upon an implied contract to pay for it, for they had a remedy over against Lochhead, had he, by a failure to perform his portion of the contract, inflicted any loss or damage upon them as to their own.

We have so far assumed that it was competent for the defendants in this action to go behind the written contract with Goodall & Nelson, upon which it appeared that they were joint contractors, bound alike to perform the whole of the stipulated work, and prove that their true relations were several and their obligations *inter sese* limited to distinct portions of the general enterprise. We entertain no doubt that it was competent for them to do so. The plaintiff here was not himself a party nor claiming under a party to that contract, and the general rule relied upon by his counsel, which is to the effect that parol evidence is inadmissible to contradict or vary the terms of a valid written instrument, applies only to controversies arising between the parties to the instrument, their representatives, and those claiming under them, and has no application to a controversy to which a stranger is a party. (1 Greenleaf, Sec. 297.) In *Reynolds* v. *Magness*, which was a controversy between one of the parties to a written instrument and a stranger, and in which the party to the instrument offered to vary its terms by parol evidence, Judge GASTON, in delivering the opinion of the Court upon this point, said:

"The rule of evidence that where the parties to a contract have reduced their agreement to writing, parol evidence shall not be received to alter or contradict the written instrument, applies to controversies between the parties and those claiming under them. The parties have constituted the written instrument to be the authentic memorial of their contract; and because of this compact the instrument must be taken, as between them, to speak the truth and the whole truth in relation to its subject matter. But strangers have not

assented to this compact and therefore are not bound by it. When their rights are concerned they are at liberty to show that the written instrument does not disclose the full or true character of the transaction.    And if they be then at liberty when contending with a party to the transaction, he must be equally free when contending with them.   Both must be bound by this conventional law or neither."    (2 Iredell R. 30.    See, also, to the same point, *Krider* v. *Lafferty*, 1 Wharton R. 314, and *Edgerly* v. *Emerson*, 3 Foster R. 564.)

Judgment and order denying new trial affirmed.