Spear, J.
The first question presented by the record is whether or not the probate court had jurisdiction to determine the question raised by the exceptions, viz.: Whether or not the $4,000 note was a claim against the partnership of Bowen & Tuttle. If that should be determined in favor of the jurisdiction, then would follow the further question as to the admissibility of the evidence offered by the plaintiffs in error at the trial in the common pleas tending to establish their exception that the note was a debt of the firm, notwithstanding the form of the note.
1. Had the probate court jurisdiction? It is important, at the outset, that the precise character of the exception be understood. It is not that the note is allowed as a claim against W. T. Bowen, for no one questions the validity of the claim; nor is it that the accounts of the plaintiffs in error are allowed as claims against the trust of W. T. Bowen, subject to the priority of claims of persons who are .actually individual creditors as contrasted with- firm creditors, but the real question is whether or not the assignees could, *534 by the form of allowance, determine finally the order in which the several claims should be paid, so that the probate court, in settling their accounts, could not, under any state of facts, entertain jurisdiction to hear and determine that question.
On the part of the banking company it is urged that the action of the assignees was, in effect, a rejection of the claims of the plaintiffs in error, and that their only remedy to avoid the result of that rejection was to proceed under section 6352, Revised Statutes, to compel an allowance of the claims. This, does not seem to us tenable. As already stated, the complaint is not that the assignees rejected the accounts as claims against W. T. Bowen, for, in fact, they did not, and it would seem to be a full answer to a petition charging such rejection that the accounts were in fact allowed. The question has not before been presented in this court, but it was involved in the case of Wrightson v. Assignee of Helmick, determined by the circuit court of Hamilton county, reported in 2 O. C. C. Reports, 381, by Smith, C. Jf. The case was disposed of upon other grounds, but the court expressed a serious doubt whether such action could be maintained under section 6352, and indicated a clear opinion that, if it could be, the court should only decide such a question when the proper parties, those interested in the question, are before the court.
The language of section 6352 limits the right of action to cases where the claim has* been rejected. The section gives no other relief than that the assignee allow the claim., It makes no provision for bringing in other parties than the assignee, nor for adjusting contending claims of creditors, and it is not easy to see how, applying ordinary rules of construction, the language could be held to authorize, much less require, the determination of questions other than that of whether or not the claim should be allowed.
It is further contended that, in order to challenge the priority of the claim of the banking company, the plaintiffs in error should have given bond, as contemplated by section 6353, and thus required the company to resort to a proceeding to determine the question of priority. This section *535 authorizes the determination of .the same question as that put in issue in an action under 'the preceding section, and between like parties, and none other, viz.: the allowance, or disallowance, of the claim, in a contention between the plaintiff creditor and the assignee, and without the presence of other parties interested. But, as before suggested, the allowance of the claim was not the ground of complaint in this case, for the note was, admittedly, a valid claim against the estate of W. T. Bowen, and it is not perceived that the provisions of section 6353, any more than those of the preceding section, would give opportunity for determining the priority of the conflicting claims, which was the relief desired.
The further contention of the banking company, on this point, is that the probate court can have no jurisdiction except as given by statute; that the only equity jurisdiction of that court respecting matters in insolvency, is given by the first clause of section 6351, which directs that that court “shall order the payment of all incumbrances and liens upon any of the property sold, or rights and credits collected, out of the proceeds thereof, according to priority; ” that the power to determine priorities is, in its nature, equitable, and that, as there never was an original equity jurisdiction in insolvency in that court, it follows that we cannot impute any jurisdiction over the matter in investigation. In other words, the power to determine priorities between creditors of a firm and of an individual member rests alone in the assignee, subject only to review by the court of common pleas in the manner pointed out by the sections of the statutes hereinbefore referred to.
But is it certain that the clause of section 6351, above quoted, does not confer the jurisdiction ? In general, the word lien implies a hold or claim upon property for some debt or charge. “The term lien,” says Whittaker, in his work on Riens, 1. “ as adopted by our courts of law and equity, and as used by our legal writers, differs in the extent of its acceptation. In that which is most extensive, it applies to every case in which either real or personal property is charged with the payment of any debt or duty; *536 every such charge being denominated 1 a lien on the property.’” It is also defined in Jac. Raw Diet, title Rien, as “an obligation, tie or claim, annexed or attaching upon any property, without satisfying which such property cannot be demanded by the owner.” And in 13 Am. & Eng. Ency. of Raw, 608, it is said that “ an equitable lien is a right not recognized at law, to have a fund or specific property, or its proceeds, applied in whole or in part, to the payment of a particular debt or class of debts.” Giving effect to these definitions, does it not appear that the language of section 6353 may apply to the question in issue? It was held, in Haskins v. Alcott, 13 Ohio St., 210, that the assignment “devotes all the property covered by it to the creditors presenting their claims in pursuance of the statute.” And in Lindemann v. Ingham, 36 Ohio St., 12, 13, after reciting the various provisions regarding the making and settlement of assignments, including section 6351, this court, by Oicey, J., says: “ These provisions show very clearly that the legislature intended to vest in the probate court full and complete jurisdiction over the whole subject of assignments of this character. True, the court is so organized, as to render it impracticable that it should exercise jurisdiction in actions for money against the debtors of the assignor. It is also true, that where the real estate assigned is encumbered with liens, the assignee may file a petition to sell the same in the court of common pleas. This provision was made because of the complex questions which are sometimes presented in regard to liens on real estate, embracing, as they do, questions as to liens by mortgage and judgment, liens by execution foreign and domestic, vendor’s liens, mechanic’s liens, liens of occupying claimants, and others. But even questions of this character may be determined in the probate court.
“The express exception that the petition, in the case just mentioned, may be filed in the court of common pleas, affords additional evidence that the legislature intended that in all other respects the jurisdiction of the probate court, in the administration of the trust, should be exclusive, though not final, for there is the right to appeal or prosecute error.”
*537 If “ the assignment devotes all the property to the claims of creditors,” and if “ the legislature intended to vest in the probate court full and complete jurisdiction over the whole subject of assignments,” save where jurisdiction is expressly lodged elsewhere, it would seem reasonable to conclude that the term “lien,” in section 6351, was intended to be understood in its extended sense, and that, by virtue of that section, the jurisdiction of the probate court is not limited to a determination of specific, statutory liens, but extends to equitable liens of whatever character, which may be involved in controversies between creditors, and hence it may determine priorities between the several creditors to the fund out of which distribution is to be ordered. See, also, the opinion of Wirrrams, J., in Sayler v. Simpson, 45 Ohio St., 144.
But if, for the sake of the argument, we assume that the language of that section does not, in terms, expressly confer the jurisdiction, does it follow that such power is wanting? Although the probate court is of limited and statutory jurisdiction, it is, we think, a mistake to suppose that it has no equity powers unless the same are expressly conferred. A power given to make a particular order implies authority to hear and dispose of all questions which it is necessary to have settled before the making of such final order, unless the needed authority is distinctly denied.
An examination of other sections of the gtatute would indicate that the necessary authority is fairly to be implied. Section 6356 requires that an account shall be filed in the probate court by the assignee, containing a full exhibit of all his doings as such, up to the time of the filing thereof, to-which exceptions may be filed by parties interested, and such accounts shall be examined, and the exceptions thereto heard by the court, and whenever, on settlement, the same shaE show a balance remaining in the hands of the assignee, subject to distribution among the general creditors, a dividend shall be declared by the probate judge, payable out of such balance equally among all the creditors entitled. The ultimate order is this distribution among general creditors. If any disputed question arises before the making of the *538 order, necessary to be settled in advance, the probate court would seem to be the tribunal authorized to hear and dispose of it; at least this would be so unless the power is expressly denied, or some other procedure pointed out for its settlement. No denial of jurisdiction to entertain the question in dispute here is found in the statute, nor is any other procedure therein indicated.
Now, in order to ascertain what, amount is in the hands of the assignee subject to distribution among general creditors, it is necessary that the fact of who are general, and who preferred, creditors, should be first ascertained. This involves the very matter in dispute in this case. The court must necessarily decide whether there are preferred creditors, and who they are. No distribution among general creditors can be made until this is done. To make such final orders in a case like the present, the court must ascertain who are creditors of the firm, and who of the individual member, and when that question is in dispute, its solution is a necessary step to the making of the final order. It would seem, therefore, that upon this ground the jurisdiction of that court to determine the question of priorities as between creditors of the firm and of the individual members, may be maintained. If such jurisdiction exists in the probate court it also exists in the common pleas on appeal, and this is so irrespective of the provisions of section 6407, allowing appeals, which directs that the appeal shall be tried and determined in the same manner as though the common pleas had original jurisdiction.
Our conclusion is, we think, sustained by the holding of .this court in Owens v. Ramsdell, 33 Ohio St., 439. A creditor brought action under the statute, now section 6352, against an assignee of an insolvent, whose estate was being settled in the probate court of Cuyahoga county, to compel an allowance of his claim. He had, before bringing the suit, presented the claim to the assignee who refused- to indorse an unqualified allowance. The refusal was based, not upon any denial of the justness of the claim, but because it had not been presented within six months after notice of appointment, and because a dividend had been made and *539 paid, and it was averred that the assignee had offered to alio w the claim without prejudice to the dividend. The court, by Day, J., held that payment of a dividend was not of importance; that the plaintiff was “entitled to have his claim allowed, in the settlement of the trust, for whatever, under the direction of the probate court, it might.be entitled to. At most, the offer of such qualified allowance by the assignee, could affect only the question of costs, and not the plaintiff’s right to a judgment against the assignee for an unqualified allowance of the claim. Such an allowance would determine nothing more than that the claim should be allowed and not rejected in the settlement of the trust. How it should be disposed of in the settlement of the trust, as we have said, was a matter to be determined, not in this case, but by the tribunal having jurisdiction of the settlement of the trust.” And the court’s syUabus holds: 1. “That in a suit pursuant to the statute for the allowance of the claim, the creditor was entitled to a judgment against the assignee that he allow the same in the settlement of the trust. 2. That the offer of a qualified allowance of the claim by the assignee affected the question of costs only, and not the creditor’s right to an unconditional allowance of his claim. 3. That the disposition to be made of the claim so allowed was not to be determined in such suit, but must be controlled by the tribunal having jurisdiction of the settlement of the trust.”
The effect of this holding is that the assignee had not, but the court in which the trust was being administered had, the power to determine what claims, if any, had priority, and that, in the case at bar, the effort of the assignees to usurp the office of the court was wholly without authority. And as the assignee had the power to allow the plaintiff’s claim, which they did, but were without power to adjust priorities, it was proper for the plaintiff to assume that the claims had been allowed, and to disregard the further action of the assignee regarding them as a nullity.
2. The objection to the admissibility of the evidence offered by plaintiffs in error at the trial in the common pleas was on the ground that the note in controversy was joint *540 and several in its terms, the individual undertaking of W. T. Bowen and J. M. Tuttle, and that the offer was to give evidence extrinsic to the instrument itself, and thus vary and modify its terms without contradicting it.
Assuming, without holding, that the evidence offered does tend to vary and modify the terms of the contract, we think it should have been received. It is not intended to dispute the general proposition of the inadmissibility of parol evidence to vary the terms of a written instrument. But the question always involves a consideration of the parties. As between the parties to the instrument, such evidence, in the absence of fraud and mistake, is inadmissible. Not so, however, necessarily when the rights of third parties are involved. Says Prof. Greenleaf in his work on Evidence, section 279 : “"The rule under consideration is applied only (in suits) between the parties to the instrument; as they alone are to blame if the writing contains what was not intended, or omits that which it should have contained. It cannot affect third persons, who, if it were otherwise, might be prejudiced by things recited in the writings, contrary to the truth, through the ignorance, carelessness, or fraud of the parties; and who, therefore, ought not to be precluded from proving the truth, however contradictory to the written statement of others.”
The rule is well founded, and rests on principle and convenience. So also, as we think, does the exception. The parties to the instrument have constituted that the medium for expressing their purpose and compact, and they may well be held estopped to deny the compact so long as the same is in force. If either claims that the paper, by reason of fraud or mistake, does not express the true intent and agreement of the parties, he can have, in a proper action, the means of setting it aside or reforming it. But strangers have not assented to the compact, nor can they be heard in a proceeding to set aside or reform it. Hence they are at liberty to show that the written instrument does not disclose the true character of the transaction. And this right could not be denied in a case where the opposite party is a party to the instrument.
*541 ' And the exception to the general rule is fully recognized bj7 text-writers and in many adjudicated cases. 1 Poth. on Ob., 506; Overseers v. Overseers, 10 John., 229; McMaster v. Insurance Co., 55 N. Y., 222 ; Brownsr. Thurber, 77 N. Y., 613; Krider v. Lafferty, 1 Wharton (Pa.), 314; Johnsons. Blackman, 11 Conn., 351; Tobey v. Leonard, 2 Clifford, 40; Edgerly v. Emerson, 3 Foster (N. H.), 555; Talbot v. Wilkins, 31 Ark., 411; Reynolds v. Magness, 2 Iredell (Raw), 26; Smith v. Moynihan, 44 Cal., 53; Hussman v. Wilke, 50 Cal., 250; Cunningham v. Milner, 56 Ala. 522.
In the present case the evidence offered tended to show that the money received upon the note was obtained from the bank for the benefit of the firm, was credited to the firm on the bank book, and was applied exclusively to the firm’s use; that the parties understood at the time that the transaction was a firm, and not an individual, transaction, and that neither member had any interest in the consideration other than as á member of the firm. Had the excepting creditors succeeded in establishing that the note was a firm obligation in fact, then the banking company’s claim and their claims as to the balance due, would have stood upon an equality, and all would have had ah' equal right to pro rata distribution of the assets of the assignment of W. T. Bowen. True, there were, in form, two assignments. But the assignees were the same, and the creditors the same, and no good reason is apparent why the court should not, for the purpose of disposing of the question made by the exceptions, have treated the two as one trust.

The judgment of the circuit court will be reversed, and the cause remanded to the common pleas for further proceedings in accordance with this opinion.