MATER, JR., AN INFANT, *v.* BROWNING BROTHERS AMUSEMENT CO.

(Decided June 27, 1928.)

*Messrs. Smoyer & Smoyer,* for plaintiff in error.
*Messrs. Rockwell & Grant,* for defendant in error.

PARDEE, J.   The parties stand in the same relative positions in this court as they did in the court of common pleas, which court directed a verdict for the defendant upon its motion, after the impaneling of a jury and before the introduction of any testimony.

The defendant, before said action was taken, made two motions to dismiss the case, in the following order, to-wit:   First, because the court had not acquired jurisdiction over the person of the defendant, which motion was overruled.   Second, because (a) the petition did not state a cause of action against the defendant, and (b) the petition, taken

in connection with the opening statement of counsel for plaintiff, did not state a cause of action against the defendant, which motion was sustained.

We will take up these two motions in their order.

In the petition of the plaintiff the defendants are named as "Browning Brothers Amusement Company, a copartnership," and "Charles A. Browning." Service was not had upon Charles A. Browning, but service of summons was made by the sheriff upon the defendant Browning Brothers Amusement Company, in the following language:

"Received this writ Sept. 10, 1926, at 2:55 o'clock p. m. And on Sept. 10, 1926, I served the within named The Browning Brothers Amusement Company, a copartnership, by H. B. Gibbins, as managing agent of defendants in Summit County, Ohio, at its usual place of business in said county, by personally handing to him a true and certified copy thereof with all the endorsements thereon, the president or other chief officers of said company not found in my county."

In the second paragraph of the petition we find this allegation, to-wit:

"That the defendant, Browning Brothers Amusement Company, is a copartnership, organized under the laws of the State of Illinois, but engaged in business in Summit County, Ohio."

In the third paragraph of the petition we find the following:

"That upon its said premises, The Summit Beach Park Company, by virtue of a written agreement, the terms of which are unknown to the plaintiff, at all of the times herein mentioned has authorized and permitted the defendant to operate and conduct a

concession therein, and has constructed and has operated one of its 'Puzzletown' devices to which it admits the public for a consideration, and which concession at all of the times mentioned has been in charge, and under the control, of a managing agent and servant of the defendant.''

The next paragraph contains the following:

''That said 'Puzzletown' |device consists of a building about forty (40) feet square with two openings in the front thereof, one of which is an entrance and the other an exit.''

The next paragraph, on page 3 of the petition, states:

''That the plaintiff and said other boys, after visiting numerous other concessions and places of amusement within the park premises, came to the building so owned, operated, and conducted by the defendants, and known as 'Puzzletown.' ''

In the petition of the plaintiff the names of the partners are not alleged, and the suit was brought against the alleged partnership, under favor of Section 11260, General Code, which provides as follows:

''A partnership formed for the purpose of carrying on a trade or business in this state, or holding property therein, may sue or be sued by the usual or ordinary name which it has assumed, or by which it is known.

It is not expressly alleged in the petition that said Browning Brothers Amusement Company was formed for the purpose of carrying on a trade or business in this state, or that it was organized for the purpose of holding property therein. But from the foregoing quotations from the petition it is alleged that said partnership is engaged in business in

said state; that it owns property therein; and that its business is carried on in said property in Summit county in said state.

In the trial court the defendant, without entering its appearance, first attacked the jurisdiction of the court by motion to quash, which motion was overruled; and the defendant has since that time, at every available opportunity, objected to the court assuming jurisdiction of its person, and has not waived its right to present the question in this court [*Ohio Elec. Ry. Co.* v. *U. S. Express Co.*, 105 Ohio St., 331, 137 N. E., 1; *Smith* v. *Freshwater*, 4 Ohio App., 335, 23 C. C. (N. S.), 142, 26 C. D., 56], which it has done by oral argument and printed brief; so if jurisdiction was not acquired over the person of the defendant the other questions presented by the record become unimportant so far as this case is concerned. So the first question we will consider will be: Was jurisdiction acquired over the person of the defendant partnership?

When Section 11260, General Code, was originally passed by the General Assembly of this state on February 27, 1846 (44 O. L., 66), it read as follows:

"Sec. 1. Be it enacted by the General Assembly of the state of Ohio, that any company or association of persons, formed for the purpose of carrying on any trade or business, or for the purpose of holding any species of property within the state of Ohio, and not incorporated as such, may sue or be sued, in any of the courts of this state, by such usual or ordinary name as such company, partnership or association may have assumed to itself or be known by; and it shall not be necessary in such case to set forth, in the process and plead-

ings, or to prove at the trial, the names of the persons composing such company.''

It remained unchanged until the act to revise and consolidate the laws relating to civil procedure in common pleas and other courts was passed in 1878 (75 O. L., 607), when it (Section 19 of said act) was amended to read substantially as it does at present.

It is conceded that the petition in the instant case does not expressly allege that the defendant partnership was formed for the purpose of carrying on a trade or business in this state, but it is expressly alleged that said partnership is engaged in business in and owns property in said county.

Before the revision of 1878, and when the law remained as originally passed, the Supreme Court, in considering a petition in a suit brought in the firm name of a partnership, stated as follows:

''The petition, so far as relates to the character and capacity in which the plaintiffs sue, is in these words: 'The plaintiffs say that they are a firm doing business under the name and firm of Alcott & Horton.' The Christian names of the partners are not stated. Nor is it stated that they are a company *formed for the purpose of carrying on any trade or business within the state of Ohio,* nor that they are or were doing business under that name *within the state,* and there is no averment from which such a state of facts can fairly be inferred.'' *Haskins* v. *Alcott & Horton,* 13 Ohio St., 210, at pages 215, 216.

Upon this state of the pleadings the Supreme Court held, in the second paragraph of the syllabus:

''2. A proper construction of Section 1 of the

'act regulating suits by and against companies and partners' (S. & C. St., [page] 1138), authorizing suits by and against companies not incorporated, in the *firm name*, limits its operation to companies formed for and doing business or holding property within this state.''

Judge Alphonso Taft, in the case of *Globe Rolling Mill* v. *King & Co.*, 2 Cin. Sup. Ct. Rep., 21, at page 22, in commenting upon the foregoing case, said:

''I have examined the case, and do not think that the court in that case had occasion to decide this point; but the language of the opinion of the court would seem to go upon the hypothesis that the essential thing under the statute was to show that the firm was actually doing business in the state of Ohio.

''I think that, if it appears that the firm was actually doing business in the state, it is to be presumed that it was formed for that purpose, and I can not regard it a defense, that a firm, actually doing business here, was intended to do business somewhere else.''

We are therefore unanimously of the opinion, giving to the plaintiff's petition the liberal construction which we are required to do upon the defendant's motion, in connection with the express allegations of the petition, that the defendant partnership was formed for the express purpose of conducting in this state, within the meaning of said section, the business set forth in the petition. We are further of the opinion, giving to said section of the statute, as amended, the usual and ordinary meaning that it ought to receive, that a partnership holding property within this state may sue or be

sued by the usual or ordinary name which it has assumed, without alleging in said petition that said partnership was formed for the express purpose of holding property within this state. To the same effect is the holding of the court in *Irvine* v. *Church,* (D. C.) 227 F., 252, the first paragraph of the syllabus reading as follows:

"Under Rev. St. Ohio, Section 5011, providing that a partnership formed for the purpose of carrying on a trade or business in the state or holding property therein, may sue or be sued by the usual or ordinary name which it has assumed, if a partnership holds property in the state, it may be sued by the firm name, though not formed for the purpose of holding property in the state."

We are therefore of the opinion that the trial court was right in overruling defendant's first motion, and that it acquired jurisdiction of the person of the defendant by the service of the summons made upon it.

We will now consider whether the court committed prejudicial error in directing a verdict for the defendant at the time it did.

The plaintiff, a child of seven years at the time of the accident set forth in the petition, about which complaint is made, went to the amusement resort, located on a tract of land in the southwesterly portion of the city of Akron known as Summit Beach Park and owned and operated by a company of a similar name.

On the day in question the Akron Automobile Club had arranged with the park company to give a picnic to all children who desired to attend at said park on said day, and the park company had

agreed to admit the children so attending without charge. On said day the plaintiff and other children attended said park upon said invitation.

Among the many allegations contained in the petition of the plaintiff are the following, to wit:

"Said 'Puzzletown' device consists of a building about forty (40) feet square with two openings in the front thereof, one of which is an entrance and the other an exit. That the interior of said building is so arranged that it has an aisleway extending from the entrance through and around said building to the exit thereof, and that along the course of said winding aisleway, which is closed upon either side and has arranged series of mirrors and plate glass, so arranged and located with reference to each other that one attempting to pass through said aisleway becomes confused and puzzled, and repeatedly walks into said mirrors or plate glass; and that said mirrors and plate glass are arranged for the very purpose and design of having persons who are passing through said aisleway become confused as to the course or direction which such persons shall take or follow, and thereby amused at the confusion which results to them from the deceptive locations and positions of said various panes of plate glass and mirrors. That the aisleway aforesaid, in addition to a winding course, has in it many sharp turns and changes of direction and that the walls and ceiling along and above said aisleway have set in them said panes of plate glass and mirrors. * * *

"That the plaintiff and said other boys, after visiting numerous other concessions and places of amusement within the park premises, came to the

building so owned, operated and conducted by the defendants, and known as 'Puzzletown.' That they observed that both the entrance and exit doors into said building were open, and thereupon the plaintiff and two (2) other of said boys entered into said building at the entrance door, and followed along the course of said aisleway for a distance of about fifteen (15) feet, when they suddenly saw before them, about five (5) feet away, a managing agent, and servant of defendant, who was then and there in charge of said concession for the defendant, said managing agent and servant being a man of about thirty-five (35) years of age. That at the same time, the managing agent and servant of the defendant saw the plaintiff and the two other boys and in a loud tone of voice called out to them, 'Hey, you kids, get out of here,' and immediately ran toward them in pursuit of them, and within a few feet caught one of said boys who was nearest to him.

"That upon hearing said managing agent and servant call to them as aforesaid, and seeing him, the plaintiff turned and ran back toward the entrance door by which he had come into said building, and when he reached a point near the front part of said building, and within five (5) feet of the entrance thereto, by reason of the deceptive location and position of said various panes of glass and mirrors as aforesaid, the plaintiff bumped into a pane of plate glass about two and one-half feet wide and six and one-half feet high, and of the thickness of about three-sixteenths of an inch, and by the force of the collision said pane of plate glass broke and plaintiff fell headlong through it, in such

manner that a fragment of glass cut into the fleshy portion of his right leg under and slightly above the knee joint, severely lacerating said leg and all of the fleshy portion thereof to the bone, and severing both of the arteries which lead to the lower limb and foot; and that as a result thereof, he suffered the serious and permanent injuries hereinafter described.''

From these allegations of the petition it is apparent that the plaintiff was one of the guests upon the ground of said amusement company; that the ''Puzzletown'' device, owned and operated by the defendant, was one of the concessions and places of amusement upon said ground; that the plaintiff and other boys had visited other places of amusement located on said ground. It is also apparent from the statement of counsel and the allegations of the petition, that, seeing the front door of ''Puzzletown'' open and unattended, said boys ventured into said place of amusement, when the acts and conduct of the defendant's agent occurred, as alleged.

From the facts, which are admitted by defendant's motion, we are of the opinion, the door of ''Puzzletown'' standing open and unattended, that the plaintiff and his companions had a right to assume that the owners were extending to them an implied invitation to enter; and having so entered, they were there as guests or invitees of said defendant, and not trespassers; but, whatever their status may have been at the time the defendant's agent ordered them from said place in a threatening and menacing manner, he put them in great fear and caused them to have an immediate desire

to escape from said agent and find a place of safety. The agent knew of the confusing and difficult way of seeking a safe exit, and that the plaintiff and his companions were infants of tender years and would be frightened by his words and conduct; yet, knowing these facts, he, in total disregard of their rights, and by an entire absence of care for the safety of the plaintiff and his companions, and with a total indifference to the consequences which might ensue to them when they attempted to escape from him, created a situation dangerous to the plaintiff, which became the direct and proximate cause of his injuries, without which acts and conduct of said agent the plaintiff could have and probably would have reached a place of safety without injury to himself and without harm to the defendant.

We are therefore unanimously of the opinion that the petition of the plaintiff does state a cause of action against said defendant, and that the opening statement of plaintiff's attorney did not weaken any of said allegations or detract therefrom.

The judgment of the trial court is therefore reversed and the cause remanded for further proceedings as provided by law.

*Judgment reversed and cause remanded.*

WASHBURN, P. J., and FUNK, J., concur.